CITY OF HOLLY SPRINGS *v.* MANNING & WATSON.

CONTRACT. *Attorneys' engagement, when to cease. Case in judgment.*
    M. & W., attorneys, were employed by the city of Holly Springs to defend a certain suit, brought in the United States Court for the Northern District of Mississippi, on some bonds issued by said city in aid of the Memphis, Holly Springs, Okalona & Selma Railroad, and to continue their services in defense of said suit in the Supreme Court of the United States, at Washington, should the same become necessary. The city paid M. & W. $1,000 in cash, and agreed to pay their necessary expenses on the trip to Washington, if it became necessary for them to go there to defend the suit, and agreed, further, "when the litigation aforesaid shall have been brought to a close, to pay the said M. & W. such further sum for their said services in defending said suit as may be fair, reasonable, and just, under all the circumstances." After the suit referred to had been decided in the United States Circuit Court in favor of the city, but before the time for suing out a writ of error had expired, M. & W. brought an action on this contract for the balance of their fee. *Held*, that this action was prematurely commenced.

2. SAME. *Attorneys' fees, how determined.*
    Where attorneys are employed to defend a suit, upon the agreement of the defendant to pay them, when the litigation shall have been brought to a close, "such sum for the said services in defending said suit as may be fair, reasonable, and just, under all the circumstances," the sum to be paid is determin-

able by the importance of the contest, the labor and responsibility of counsel, and every circumstance attending the cause which, according to established usage, seems to guide to a conclusion as to what is a proper professional charge in such a state of circumstances.

ERROR to the Circuit Court of Marshall County.

Hon. R. S. STITH, Special Judge, by agreement of the parties, Hon. J. W. C. Watson being disqualified.

This suit was brought by the defendants in error against the mayor and aldermen of the city of Holly Springs, for $4,000 for services as attorneys, under a special contract, which recited that, " whereas the said city of Holly Springs, through its corporate authorities, issued bonds bearing interest at eight per cent per annum, in payment of $75,000 of the capital stock in the Memphis, Holly Springs, Okalona & Selma Railroad Company, for which subscription had been made by the said corporate authorities of the said city of Holly Springs; and whereas suit has been instituted in the United States District Court for the Northern District of Mississippi, at Oxford, to collect said bonds, or some of them, or the interest, or some part thereof, due thereon, and to test the validity of said subscription and the liability of the said city of Holly Springs for the payment of said bonds and interest, the said mayor and aldermen of the said city of Holly Springs have this day employed Featherston, Harris & Watson, and Manning & Watson, to defend the suit brought in the said court, and such other legal proceedings as may be instituted within the said Northern District of Mississippi to collect said bonds, or any part thereof, or the interest upon the same, and to continue their services in defense of said suit or suits in the Supreme Court of the United States, at Washington, should the same become necessary.   And the said mayor and aldermen of the city of Holly Springs have this day paid to the said Featherston, Harris & Watson, and Manning & Watson, one thousand dollars in cash for their said services. * * *   And the said mayor and aldermen of the city of Holly Springs do hereby agree and bind themselves and their

successors in office, in the event it becomes necessary and proper for the said parties of the second part to visit the city of Washington, to attend to the litigation aforesaid, or any part thereof, to pay the said parties of the second part such additional sum as may be necessary to pay the necessary expenses of said trip and visit to Washington. And the said mayor and aldermen of the said city of Holly Springs do hereby further agree and bind themselves and their successors in office, when the litigation aforesaid shall have been brought to a close, to pay the said Featherston, Harris & Watson, and the said Manning & Watson, such further sum for their said services in defending said suit or suits, and in attending to said litigation, as may be fair, reasonable, and just, under all the circumstances — one-half to Featherston, Harris & Watson, and the remaining one-half to Manning & Watson."

The suit mentioned in the contract as having been commenced against the plaintiff in error had been determined in the United States Circuit Court in favor of the defendant therein, at the time this action was instituted, and the declaration referring to that suit averred that " no appeal or writ of error has been prosecuted from the decision of the court." Several instructions given for the plaintiffs below were excepted to, but they need not be set out, as the questions which arise upon them are disposed of by a construction of the contract. There was a verdict and judgment in favor of the plaintiffs below for $4,000.

*Walter & Walter*, for the plaintiff in error.

1. The contract sued on was divisible and several in its character, and under it plaintiffs could not, for the present, maintain any action. The $2,000 received by them paid them in full for their services in the suit in the United States Court at Oxford. They might possibly recover something further if they prosecuted that suit in the Supreme Court at Washington; and as other suits were thereafter brought and plaintiffs defended the same, they could possibly recover additional compensation for the labor. 2 Pars. on Con. 517;

Story on Con., secs. 21, 22 ; 2 Smith's Ld. Cas., top p. 49 ; *Brown* v. *Vinel*, 3 Metc. 533 ; *Dibble* v. *Minot*, 70 Iowa, 403 ; *Berryman* v. *Hewitt*, 6 J. J. Marsh. 462 ; *Morgan* v. *Ward*, Waite (O. R.), 407 ; *Jackson* v. *Cleaveland*, 15 Wis. 107 ; *Perkins* v. *Hart*, 11 Wheat. 237.

It cannot be doubted, therefore, that this contract is sever-able. In fact, plaintiffs admit it in their declaration, when they allege that "they are ready, able, and willing to defend all other suits," and when they are compelled to further allege, as they did, that the city was released from all liability on its bonds by the decision at Oxford.

If the contract is not severable, then plaintiffs can recover nothing until they have performed their part of the contract fully, or allege that defendant by its conduct placed it out of their power so to do. This allegation they could not make, as they contracted expressly in view of the contingency of suits being brought against the defendant, over which defendants had no more control than plaintiffs themselves. If, therefore, the contract be entire, the demurrer to the declaration should have been sustained, because of the non-performance of the contract by plaintiffs ; and the instructions given and the verdict rendered for them were wholly erroneous.

2. To escape the effect of the foregoing errors, plaintiffs were driven to the singular position of holding defendant estopped from any defense by the use of the words "test suit" in the contract. Is this position tenable? Is there a single essential feature of estoppel in this contract? (1.) There must be mutuality. Is there anything of this kind between plaintiffs and defendant in that contract? (2.) Estoppel must be upon facts, not conclusions of law. Is there anything but a conclusion of law in the statement that the suit at Oxford was a "test suit?" (3.) Estoppels do not obtain where there is knowledge of the state of affairs. *Mananes* v. *Henderson*, 1 East, 525 ; *Wilton* v. *Harwood*, 23

Me. 131; 2 Pars. on Con. 796; Herman on Estop., sec. 442; *Belleton* v. *Jackson*, 11 Wend. 119; *Pargetter* v. *Harris*, 53 Eng. Com. Law Rep. 708; *Wheelock* v. *Henshaw*, 19 Pick. 341. (4.) To give rise to an estoppel there must be a willful representation by one party, with intent to deceive the other. Big. on Estop., sec. 329; *Boggs* v. *Mining Co.*, 14 Cal. 366; *Andrews* v. *Lyons*, 11 Pick. 349; Herman on Estop., sec. 442; 2 Pars. on Con. 801. (5.) It must be certain to every intent. *McComb* v. *Gilkey*, 29 Miss. 190.

Not an element, in fact, of estoppel is found in this contract; and yet the court below, in view of the words " test suit " in the contract, charged the jury that, in determining the amount to which plaintiffs were entitled, the jury should consider the suit at Oxford " as testing the validity of all the bonds issued by said city, as described in the contract."

*Fant & Fant*, on the same side.

1. The contract sued on is severable and divisible; and the plaintiffs below could not in the same action sue for services performed, and those to be performed. 2 Pars. on Con. 520.

2. The declaration does not show a final settlement of the invalidity of the bonds. Under the contract the defendants in error are only entitled to full compensation when all questions as to the validity of the bonds have been finally adjudicated. The questions involved have not been presented to an appellate court, and there are other bondholders, who are not bound by the judgment in the United States District. When this suit was brought, the time for taking an appeal from that judgment had not expired.

3. On the question whether the plaintiff in error was estopped by its contract to deny that the suit in the United States District Court was regarded as a test case, the following authorities are cited: 2 Pars. on Con. 799; Herman on Estop., secs. 216, 219; *Butler* v. *City of Milwaukee*, 15 Wis. 552, 553; 1 Dill. on Mun. Corp., sec. 381; 2 *ib.*, secs. 749,

766; *Rich* v. *Atwater*, 16 Conn. 418; *Bolling* v. *Mayor*, 3 Rand. 576; *McComb* v. *Gilkey*, 29 Miss. 190; *Hays* v. *Askew*, 5 Jones, 63; 1 Story on Con., sec. 782.

*H. W. Walter* and *Arthur Fant*, of counsel for the plaintiff in error, argued the case orally.

*Featherston & Harris*, for the defendants in error.

1. In construing the contract, the condition of the contracting parties at the time the contract was made, and the circumstances surrounding them, must be considered. Pars. on Con. 499; 1 Add. on Con., sec. 221; 28 Ala. 321; 10 Mass. 379.

If the bonds had been held valid in the first suit, the corporation would have been liable for the whole amount of the indebtedness of $200,000; but the defeat of that suit discharged such indebtedness. The city of Holly Springs, thus situated, shows, by the terms of the contract, that its object in employing the defendants in error was to test its liability on the whole amount of the bonds. The suit for $5,000 was a matter of small importance, except as a means of testing the validity of all the bonds. The language of the contract itself is : " to test the validity of said subscription, and the liability of the said city of Holly Springs for the payment of said bonds and interest." Contracts must be rationally construed ; and it is not to be presumed that the corporation intended to submit to suit on each bond and coupon. When its liability had been ascertained, it would have prepared to pay the indebtedness, and thereby save further costs and expenses. The whole object of the plaintiff in error in making the contract declared on was to test its liability on its bonds. In construing a contract, the main purpose of the contracting parties should not be defeated. 2 Add. on Con. 844, 845; 2 Pars. on Con., sec. 2; 3 U. S. Dig., secs. 805, 806.

The corporation of Holly Springs made the case which was pending at the time the contract was entered into a test case, by the express terms of the contract, three times repeated. And it is now estopped from denying that it was a test case.

The doctrine of estoppel applies to corporations with as much force as it does to individuals. *Randolph County* v. *Post*, 3 Otto, 513; Big. on Estop. 464; *Moran* v. *Comrs.*, 2 Black, 722; *Pendleton* v. *Avery*, 13 Wall. 297; 1 Dill. on Mun. Corp., secs. 375, 383, 398. The judgment in the Wells case is a finality as to all the bonds and coupons.

2. But it is insisted that the defendants in· error were bound by their contract to defend all other suits that may hereafter be brought against the corporation on said .bonds. The contract must be rationally construed. How long were the defendants in error required to wait, to learn whether other suits would be brought on these bonds? One, two, or three years, or a century? The contract does not say how long they shall wait. In such case the law says a " reasonable length of time." · They waited until the time for taking an appeal in the Wells case had expired, and no appeal was taken. They waited for more than two years after the decision in that case, and no other suit on the bonds was instituted, or even threatened. The invalidity of those bonds has been ascertained and declared by a court of competent jurisdiction. The great object of the contract has been accomplished. The contract has been fully performed on the part of the defendants in error.

3. But the opposing counsel insist that the contract is severable and divisible. " If the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item to be performed, or is left to be implied by law, such a contract will generally be held to be severable." 2 Pars. on Con. 517. "And if the consideration to be paid is single and entire, although the subject of the contract may consist of several wholly distinct and independent items, the contract· must be held to be entire." *Ib.* 519. Apply these rules to the contract sued on, and there can be no doubt that it is entire, and not severable. The corporation paid $1,000. for a retainer and as an advance on the general fee, and agreed to pay, at the

end of the litigation, for the whole service to be rendered, and not for any particular item, such further sum as should be reasonable, just, and fair, under the circumstances.

*W. S. Featherston* and *J. T. George*, on behalf of defendants in error, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

Our construction of the contract out of which this suit has grown is that, as a suit had been instituted against the plaintiff in error, which, it was assumed, involved the liability of the city on its subscription, and bonds issued in payment of its subscription, to the amount of $75,000, to the capital stock or the railroad company named in the contract, therefore, in order to test the question of its liability in that respect, the corporate authorities of said city employed the counsel named in the contract to defend the suit brought in the United States Court at Oxford, "and all such other legal proceedings as may be instituted within said Northern District of the state of Mississippi to collect said bonds, or any part thereof, or the interest upon the same, and to continue their services in defense of said suit or suits in the Supreme Court of the United States, at Washington, should the same become necessary," and they paid said counsel $1,000 as a cash payment, and agreed to pay them the necessary expenses of a trip to Washington, if it became necessary for them to go there to attend to the litigation; and stipulated further, "when the litigation aforesaid shall have been brought to a close, to pay the said [counsel] such further sum for their said services in defending said suit or suits, and in attending to said litigation, as may be fair, reasonable, and just, under all the circumstances." The $1,000 paid was only a retainer, and not in full for the suit already brought. The counsel were engaged to attend to that suit to its close, and to all others of the kind named which might be instituted in the Northern District of Mississippi. A resort to the Supreme Court of the United States was contemplated, and the expenses of a trip there were pro-

vided for, but no further payment was to be made by the city until "the litigation aforesaid shall have been brought to a close." Then the counsel were to be paid "such further sum for their said services in defending *said suit* or suits    *    *    * as may be fair, reasonable, and just, under all the circumstances." When "said suit" was brought to a close, the counsel employed were to be paid such further sum for their services in defending it as may be fair, reasonable, and just, under all the circumstances. What sum that should be is determinable by the importance of the contest, the labor and responsibility of counsel, and every circumstance attending the cause which, according to established usage, serves to guide to a conclusion as to what is a proper professional charge in such a state of circumstances.

This action was brought prematurely. The suit plaintiffs were employed to defend had been decided in the District Court of the United States at Oxford, and no writ of error had been taken, but the time for suing out a writ of error had not expired. Certainly, with reference to the contract between the city and the counsel, which stipulates for attention to the suit in the Supreme Court of the United States, it cannot be claimed that said suit had ended before the time for pursuing it in the Supreme Court had expired.

If said suit has now ended, no obstacle exists to the institution of their suit by the defendants in error to recover for their services such sum as may be fair, reasonable, and just, *under all the circumstances.*

The declaration was demurred to, and the demurrer was overruled, and pleas were filed, and issues joined on some, while demurrers were sustained to others, and the issues of fact were tried by a jury. We have not considered the several questions arising out of the action of the court upon the demurrers, because we suppose that the views already expressed will dispose of this case, and will control in any suit hereafter instituted to enforce the claim asserted in this.

The instructions to the jury correctly expound the law, ex-

cept in so far as they maintain the right of plaintiffs below to sue under the contract before the final termination of the suit brought in the United States District Court at Oxford, by a determination of it in the Supreme Court of the United States, or the lapse of sufficient time to bar a resort to that court.

Judgment reversed and cause remanded.